## Department of Labor and Industry v.
## Meyer Brothers Company

*Herbert S. Cohen*, for Commonwealth.

*David E. Lehman*, for appellant.

LIPSITT, J., August 5, 1971.—Meyer Brothers Company (hereinafter called "Meyer") has appealed from an adjudication of the Prevailing Wage Appeals Board of the Department of Labor and Industry of the Commonwealth of Pennsylvania. The board had sustained a finding by the Secretary of Labor and Industry that Meyer had failed to pay wages required by the Pennsylvania Prevailing Wage Act of August 15, 1961, P. L. 987, as amended, 43 PS §165-1, et seq. and directed payment of such wages. An appeal was taken to this court, then serving as the Commonwealth Court, and was dismissed on January 2, 1970, by a per curiam order. The case is now presented on exceptions to that order.

The Prevailing Wage Act requires any contract for public work to contain mimimum wage rates which must be paid to workmen employed by the contractor. These rates are to be predetermined by the Secretary of Labor and Industry. Further, the secretary is empowered to supervise compliance with the act by investigating and determining whether a person or firm has failed to pay the prevailing wages. Under section 11(c) of the statute, 43 PS §165-11(c), the secretary in any such investigation is required to "provide for an appropriate hearing upon due notice to interested parties including the workmen, the employer and their respective representative, if any."

Meyer was awarded two separate contracts for public school construction which were subject to the requisites of the Prevailing Wage Act. Following a notice to the effect that a hearing would be held for the purpose of receiving testimony because the predetermined prevailing minimum wage rates had not been paid relative to these two contracts, such hearing was held on November 22, 1968, attended by an examiner for the Department of Labor and Industry, two investigators for the Commonwealth, four employes of Meyer and William Meyer who appeared on behalf of the company without counsel. A representative of an electrical workers' local union also was present and permitted to testify on the record.

On January 8, 1969, the aforementioned secretary found that appellant owed $5,951.49 to four employes. Meyer took an appeal from this determination to the appeals board, which is created under the statute to "hear and determine any grievance or appeal arising out of the administration of this act." See section 2.2, 43 PS §165-2.2(e)(1). Subsequently, the appeals board sustained the finding of the secretary. The appeal to this court was filed pursuant to

the provisions of the Administrative Agency Law as made applicable to this adjudication by the Act of June 4, 1945, P. L. 1388, sec. 47, as added by the Act of December 2, 1968 (Act No. 354), sec. 2, 71 PS §1710.47.[1]

The basic question for determination is the proper classification of the employes involved. At the hearing on November 22, 1968, the investigator for the Department of Labor and Industry testified in relation to seven employes who worked on the jobs in question. The secretary and the appeals board found that three of the employes should have been classified and paid as electricians, not as laborers. Payment ordered to a fourth workman is not contested.

There are two issues raised in this proceeding: First, whether or not the evidence supports a finding that three workmen were entitled to be classified and paid as "electricians," and secondly, whether or not the hearing as held deprived Meyer of due process of law.

The first problem concerns the sufficiency of the evidence. The scope of review by this court is delineated in section 44 of the Administrative Agency Law, 71 PS §1710.44, which obliges this court to determine whether the facts found by the secretary and affirmed by the appeals board are "supported by substantial evidence." Meyer initially points out that the Prevailing Wage Act and regulations do not define the

---

[1] The secretary had also made a finding that Meyer had intentionally violated the Prevailing Wage Act and barred the firm from further public works contracts for a period of three years. The appeals board reversed this finding. The Department of Labor and Industry appealed from that part of the board's adjudication which declared Meyer not to be an intentional violator. The per curiam order of January 2, 1970, dismissed this appeal. No exceptions have been filed to this order by the department. Thus, this opinion is limited to the issues raised by Meyer.

electricians' craft but adopt as a standard the custom and usage in the industry. It is true the act does not attempt to define the crafts or classifications of workmen. However, the secretary is authorized to promulgate regulations under the statute and in section 2 of the regulations appears the following definition:

"(j) The term 'craft' means those special skills and trades which are recognized as such by custom and usage in the building and construction industry."

Section 3(i) of the regulations provides, in part:

"Any workman using the tools of a craft who does not qualify as an apprentice within the provisions of this subsection shall be paid the rate predetermined for journeymen in that particular craft and/or classification."

Meyer's particular grievance is directed to the inadequacy of the record in disclosing the custom and usage in the building and construction industry to enable a decision as to whether the employes in question were performing duties done by an electrician.

Meyer contends the department is under an obligation to specifically establish the duties and extent of activities of the various crafts. In the absence of such demarcation in the regulations, it is appellant's position that proof of custom and usage is a prerequisite of violation, and it is submitted the record fails to denote the standards by which Meyer's conduct could be judged.

William Meyer, in his testimony, revealed his personal views as to classifications of employes. He contended the work being done by the three workmen subject to inquiry was in the nature of preparation for the skilled tasks. He testified his electricians could do service work for other customers, had supervision

duties and could make final connections and said the men found to be electricians by the secretary could not perform these jobs and were hired merely for uncomplicated laboring. He acknowledged a person could be hired as a laborer and perform the duties of an electrician, but he still considered such a person as a laborer, and he felt the classification of workmen had to be left up to the employer. "He is more capable of how to classify a certain man."

Contrary to appellant's position, the Commonwealth argues there was evidence of custom and usage in the trade and challenges the testimony of William Meyer as being purely subjective. A review of the record sustains this estimation. One investigator related his observations of the use of "tools of trade" by the three persons found to be improperly classified. He also described the work done by acknowledged electricians. The workmen testified they were performing substantially the same duties as one of the claimants who was regarded by Meyer as an electrician.[2] While not testifying as to the custom and usage in the industry, the employes did detail the specific nature of their work. There was also evidence by the Commonwealth of at least five other public work projects where workers were classified and paid as electricians who performed duties similar to the claimants here. Additionally, it may be noted that a representative of an electrical workers' union outlined certain functions of the electrical trade.

Mr. Meyer claimed the projects described were all union jobs and contested a union's interpretation as

[2] This employe worked for approximately 10 weeks for Meyer as an electrician before he received the prevailing wage. His claim for wages was recognized by Meyer and is not disputed in this appeal.

controlling or representative of custom and usage in an industry. But unfortunately, his disputation was founded only on his personal opinion and perhaps his own background with no evidentiary support.

In view of this record, it must be concluded that the workmen in question should properly be classified as electricians and entitled to the predetermined wage rate for performing such work.

The second complaint by appellant appears to be inevitable where a proceeding is held before an administrative tribunal. The hearing examiner who reported his findings and recommendations to the Secretary of the Department of Labor and Industry was an attorney employed by the department. It is asserted he was both the prosecutor and judge. Thus, it is urged, the finding of a specific violation by this person violated the requirements of due process of law. Because the "hearing examiner" repeatedly explained to Mr. Meyer the differences between his position and the Commonwealth's interpretation of the facts and application of the law, it is said he could not have been acting impartially.

Meyer cites the landmark case of Schlesinger Appeal, 404 Pa. 584 (1961), wherein the Allegheny County Bar Association Committee on Offenses charged a lawyer with professional misconduct. The committee appointed counsel to prosecute the charge and also appointed a three-member subcommittee to adjudicate the matter. The committee adopted the report of the subcommittee which recommended disbarment. The Court of Common Pleas thereafter, acting on the recommendations, entered an order. The Supreme Court reversed the decision, holding the requirements of due process were manifestly violated, because the functions of the prosecuting judge and jury were combined in one body.

As is well known, the action of the Supreme Court in the Schlesinger Appeal has been both praised and criticized. Without reviewing the comments by the many authorities, there is a Gordian knot where one man or group is permitted to act as an advocate and judge in an adversary proceeding. However, it is recognized that an administrative agency may combine investigation and judicial assignments. Here, the examiner acted as a fact finder and in a quasi-judicial capacity. While he did express his opinion with respect to the interpretation of the act during the hearing and questioned Mr. Meyer at some length, this conduct would not, in itself, be grounds for bias vitiating the entire proceeding.

As has been noted in Pennsylvania Publications, Inc. v. Pennsylvania Public Utility Commission, 152 Pa. Superior Ct. 279 (1943), reversed on other grounds in the Supreme Court, 349 Pa. 184 (1944), it was said, at page 298:

". . . The parties have a right to a fair hearing before an impartial board or body, and a determination free of bias, hostility and prejudgment. But bias in the form of a firm belief in the objectives of a statute, which the official is given power to enforce, rather than in the form of personal hostility, is not such bias as disqualifies. And where the legislature has not seen fit to separate the functions of the administrative body, it must be assumed that it did not intend that a reasonable bias in favor of the enforcement of the law should subject the official to disqualification."

Where investigation and quasi-judicial powers are conferred on the same governmental agency, this issue will continue. But a review of this record would not establish the denial of a fair and impartial hearing.

Accordingly, we enter the following

ORDER

And now, August 5, 1971, the exceptions of Meyer Brothers Company are severally overruled and dismissed, and a final decree is entered dismissing the appeal by Meyer Brothers Company from the order of the Pennsylvania Prevailing Wage Appeals Board of March 17, 1969.

The prothonotary is directed to notify the parties or their counsel of this order forthwith.